# In the United States Court of Federal Claims

No. 17-842T

(Filed: May 2, 2019)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |  |
|---|---|---|
| | * | |
| | * | |
| IOWA BANKERS BENEFIT PLAN, | * | Summary Judgment; RCFC 56; Patient |
| | * | Protection and Affordable Care Act; |
| Plaintiff, | * | Annual Fee on Health Insurance |
| | * | Providers; Covered Entity; Statutory |
| v. | * | Interpretation; <u>Chevron</u> Deference; |
| | * | Substantial Variance Rule; Waiver of |
| THE UNITED STATES, | * | Claims. |
| | * | |
| Defendant. | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Michael A. Gilmer*, Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, Iowa, for Plaintiff.

*Jason Bergmann*, Attorney, with whom were *Richard E. Zuckerman*, Principal Deputy Assistant Attorney General, *David I. Pincus*, Chief, *Mary M. Abate*, Assistant Chief, Court of Federal Claims Section, Tax Division, U.S. Department of Justice, Washington, D.C., for Defendant.

## OPINION AND ORDER

WHEELER, Judge.

On cross-motions for summary judgment, the Court must decide whether Plaintiff Iowa Bankers Benefit Plan ("the Plan") is excluded from the Affordable Care Act's ("ACA") definition of a "covered entity" subject to the Annual Fee on Health Insurance Providers ("Annual Fee") either (1) because it is a voluntary employees' beneficiary association ("VEBA") "established by an entity (other than by an employer or employers)," Pub. L. 111-148, § 9010(c)(2)(D), or (2) because it constitutes a single employer that self-insures its own employees' health risks, id. § 9010(c)(2)(A). If the Plan qualifies for either statutory exclusion, it is entitled to a refund of its Annual Fee payments for 2014, 2015, and 2016, a total sum of about $3.7 million.

First, the Court concludes that Section 9010(c)(2)(D)'s phrase "established by an entity (other than by an employer or employers)" is ambiguous and that Treasury Regulation 57.2(b)(2)(iv) provides a valid interpretation of that ambiguous phrase. Because 57.2(b)(2)(iv) disqualifies "multiple employer welfare arrangements" ("MEWAs") from (c)(2)(D)'s Annual Fee exclusion, and the Plan was, at all relevant times, a MEWA, the Plan does not qualify for (c)(2)(D)'s exclusion.

Second, the Court concludes that the Plan waived the argument that it is an employer that self-insures its employees' health risks under Section 9010(c)(2)(A), because it did not raise the point until its Response and Reply. Moreover, the Plan's argument fails because it improperly relies on the Employee Retirement Income Security Act's ("ERISA") definition of "employer" in trying to persuade the Court that the Plan and its participating employers constitute a single "employer" for purposes of (c)(2)(A).

As a result, the Plan is not entitled to a refund of its Annual Fee payments. The Plan's cross-motion for summary judgment is DENIED, and the Government's cross-motion for summary judgment is GRANTED.

## Background

### I.      Iowa Bankers Benefit Plan

The Plan is an entity that provides life, health, vision, and accident insurance, among other benefits, to the employees of financial employers located in Iowa. Pl. Mot. Summ. J. at 6-7. The Plan was established by Iowa Bankers Insurance and Services, Inc. ("IBIS"), an Iowa corporation, which sells insurance products and services to banks and other financial institutions. Id. at 6. IBIS provides a variety of administrative and other services to the Plan. Id. at 9. IBIS is 99.4% owned by the Iowa Bankers Association ("IBA") and 0.6% owned by banks located in Iowa. Id. at 7. The IBA, IBIS and the Plan are all governed by representatives from financial industry employers located in Iowa. See id. at 7-8. Generally speaking, employees of financial industry employers located in Iowa are eligible to participate in the Plan. Id. at 11-13.

The Plan is both a VEBA and a MEWA. A VEBA is a voluntary employee association "which provides for the payment of life insurance, sickness, accident, or other benefits to its members." ¶ 9.07 Voluntary Emp. Beneficiary Assoc., Madden, 1999 WL 1031996, 1. Internal Revenue Code ("I.R.C.") section 501(c)(9) exempts VEBA benefits payments to its members from federal income tax. Id. at 2. Any group of employees that share a qualifying employment-related bond may establish a VEBA, and an employer or employers may establish a VEBA on behalf of their employees. See id. (citations omitted). VEBAs fall under the regulatory purview of the Department of the Treasury ("Treasury") and the Internal Revenue Service ("IRS"). See id. at 1-3.

A MEWA is "an employee welfare benefit plan, or any other arrangement . . ., which is established or maintained for the purpose of offering or providing welfare benefits to the employees of two or more employers."  Filings Required of Multiple Emp'r Welfare Arrangements and Certain Other Related Entities, 78 Fed. Reg. 13781, 13783 (Mar. 1, 2013) (citing 29 U.S.C. § 1002(40)(A)).  MEWAs fall under the regulatory purview of the Department of Labor.  Id. at 13781.  MEWAs do not include plans or arrangements established or maintained pursuant to collective bargaining agreements.  Id.

II.      The ACA and the Annual Fee on Health Insurance Providers

The ACA, passed in 2010, includes a provision imposing an Annual Fee on "[e]ach covered entity engaged in the business of providing health insurance" in the United States. Pub. L. 111-148, § 9010(a)(1).  "'[C]overed entity' means any entity which provides health insurance for any United States health risk."  Id. § 9010(c)(1).  A statutorily defined formula dictates the amount of each covered entity's Annual Fee.  Id. § 9010(b).

The ACA also contains exclusions from the definition of "covered entity," and therefore, exclusions from the Annual Fee requirement.  Two are relevant here.  The first, Section 9010(c)(2)(D), excludes "[a]ny entity which is described in section 501(c)(9) of [the Internal Revenue] Code and which is established by an entity (other than by an employer or employers) for purposes of providing healthcare benefits."  The second, Section 9010(c)(2)(A) excludes "any employer to the extent that such employer self-insures its employees' health risks[.]"  Treasury adopted regulations implementing Section 9010(c)(2)(D)'s exclusion from the definition of "covered entity."  Treas. Reg. § 57.2(b)(2)(iv).  Under the regulation, (c)(2)(D)'s exclusion does not include MEWAs.  Id.

The Plan paid the Annual Fee for 2014, 2015, and 2016.  Pl. Mot. Summ. J. at 5. For each of those years, the Plan requested a refund from the IRS, but the IRS did not respond.  Id. at 5.  The Plan based each of its refund requests on Section 9010(c)(2)(D). Compl. Ex. A-C.  The Plan's refund requests did not reference (c)(2)(A) at all.  See id. Ex. A-C.  The Plan's Complaint also bases its refund claims solely on (c)(2)(D).  Id. ¶¶ 1-24.

Procedural History

The Plan filed its Complaint on June 22, 2017.  After limited discovery, the Plan and the Government filed cross-motions for summary judgment.  Dkt Nos. 32, 35.  Briefing concluded on March 8, 2019.  Dkt. No. 41.  The Court held oral argument on April 9, 2019.

Analysis

The Plan argues that Section 9010(c)(2)(D) excludes it from the definition of "covered entity," and thus, from the Annual Fee requirement, because it is a VEBA that is not "established . . . by an employer or employers," but by IBIS, which is almost wholly

owned by IBA.  Pl. Mot. Summ. J. at 20-23.  As a result, the Plan asserts, Treasury Regulation 57.2(b)(2)(iv) must be invalid because it contradicts (c)(2)(D) by disqualifying MEWAs and because it is arbitrary and capricious.  Id. at 31-34.

Alternatively, the Plan asserts that it qualifies for Section 9010(c)(2)(A)'s exclusion from the Annual Fee requirement for employers that self-insure their own employees' health risks.  Pl. Resp. and Reply at 10-17.  The Plan claims that if the Government is correct in applying ERISA's broad definition of "employer" to (c)(2)(D), then the same definition must apply to (c)(2)(A).  Id. at 10-11.  If so, the Plan contends that, under the ERISA definition, it is a single employer that self-insures its own employees.  Id.

The Government responds that Section 9010(c)(2)(D)'s qualifying language, "established by an entity (other than by an employer or employers)," is ambiguous. Therefore, under Chevron v. NRDC, Inc., 467 U.S. 837 (1984), the Court must defer to Treasury's construction of the statute, and Treasury Regulation 57.2(b)(2)(iv) provides that MEWAs, including the Plan, do not qualify for (c)(2)(D)'s exclusion.  The Government also contends that the Plan waived its self-insured employer argument because it failed to raise it before the IRS or in its Complaint, and, in any case, the Plan insures its participating employers' employees, not its own employees.

The Court concludes that: (1) Section 9010(c)(2)(D) is ambiguous as to whether an entity like the Plan is "established . . . by an employer or employers," such that it does not qualify for (c)(2)(D)'s exclusion from the Annual Fee; (2) Treasury Regulation 57.2(b)(2)(iv) is entitled to Chevron deference and is not arbitrary and capricious; (3) the Plan waived its Section 9010(c)(2)(A) argument by failing to include it in its Complaint; and, regardless, (4) the Plan's (c)(2)(A) argument fails on the merits.

I.      Jurisdiction and Legal Standard

The Court of Federal Claims has jurisdiction over the Plan's claims for recovery of an "internal-revenue tax."  28 U.S.C. § 1346(a)(1).  Summary judgment is appropriate here because this dispute does not involve any genuine issue of material fact.  RCFC 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

II.     Section 9010(c)(2)(D)'s Exclusion from the Annual Fee

If Treasury Regulation 57.2(b)(2)(iv) is valid, then the Plan does not qualify for Section 9010(c)(2)(D)'s exclusion from the Annual Fee.  First, the Court must determine whether 57.2(b)(2)(iv) is entitled to judicial deference under Chevron's two-step framework.  Second, the Court must examine whether the regulation was an arbitrary and capricious exercise of agency power under Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29 (1983) ("MVMA").  The Court concludes that

57.2(b)(2)(iv) is entitled to <u>Chevron</u> deference and that Treasury's issuance of 57.2(b)(2)(iv) was not arbitrary and capricious.

A.     Review Under *Chevron*

<u>Chevron</u> sets forth a two-step framework for determining whether a court must defer to an agency's interpretation of a statute that it administers.  467 U.S. at 842-845.  At <u>Chevron</u> Step One, the court examines "whether Congress has directly spoken to the precise question at issue"; if so, the court "must give effect to [Congress's] unambiguously expressed intent." <u>Id.</u> at 842-43.  If instead, "the statute is silent or ambiguous with respect to the specific issue," the court moves on to Step Two, and asks whether the agency's regulation is based on a "permissible construction of the statute." <u>Id.</u> at 843.  If so, the court cannot substitute its own construction of the statute for the agency's. <u>Id.</u> at 844.

1.     *Chevron* Step One

At <u>Chevron</u> Step One, the court examines the language of the relevant provision and uses the ordinary tools of statutory construction to determine whether Congress directly addressed the precise question at issue.  <u>Balestra v. United States</u>, 803 F.3d 1363, 1369 (Fed. Cir. 2015) (citations omitted).

Section 9010(c)(2)(D) states that a "covered entity" does not include:

> [A]ny entity which is described in section 501(c)(9) of [the Internal Revenue] Code and which is established by an entity (other than by an employer or employers) for purposes of providing healthcare benefits.

To meet the criteria for Section 9010(c)(2)(D)'s exclusion, an entity must be (i) described in I.R.C. Section 501(c)(9), (ii) established by an entity other than an employer or employers, and (iii) established for purposes of providing healthcare benefits.  I.R.C. Section 501(c)(9) refers to VEBAs, and the parties do not dispute that the Plan was at all relevant times a VEBA.  The parties also do not dispute that the Plan was established "for purposes of providing healthcare benefits."  As a result, the precise question at issue is whether the Plan "is established by an entity (other than by an employer or employers)."

The Plan argues that it was established by IBIS, which is almost entirely owned by the IBA, to provide insurance coverage to employees of the Plan's participating employers; and therefore, it was not established by an "employer or employers." Pl. Mot. Summ. J. at 23.  This may be one reasonable—if narrow and restrictive—reading of the Section 9010(c)(2)(D).  But it is not clear from the provision's text or legislative history that this is the reading Congress intended.

5

The phrase "established by an entity (other than by an employer or employers)" must encompass entities set up by multiple employers. See BASR P'ship v. United States, 795 F.3d 1338, 1360 (Fed. Cir. 2015) ("[C]ourts must give effect, if possible, to every clause and word of a statute."). Section 9010 does not define the terms "employer" or "employers," or "established by," and the ordinary meaning of "employer" does not any shed light on when an entity is "established by" multiple "employers." See "Employer," Black's Law Dictionary (10th ed. 2014) ("[a] person, company, or organization for whom someone works."). Section 9010's context and legislative history also do nothing to elucidate Congress's intended meaning.[1]

Title I of the ACA incorporates the definition of "employer" from Section 2791 of the Public Health Service Act. 42 U.S.C. § 300gg-91(d)(6). That provision, in turn, refers to ERISA's definition of "employer." Id. The Government half-heartedly mentions that the Court could apply that definition to Section 9010(c)(2)(D). Def. Mot. Summ. J. at 7-8. But Congress expressly applied this definition to Title I of the ACA, not Title IX, where Section 9010 resides. If Congress wanted the ERISA definition of "employer" to apply to Title IX, it could have said so.

The text "established by an entity (other than by an employer or employers)" could be read narrowly, as the Plan suggests, or could be read to include arrangements in which employers create distinct entities to provide insurance to their employees. The fact that the text is open to multiple reasonable interpretations supports concluding that the phrase at issue is ambiguous. See, e.g., Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives, 920 F.3d 1, 30-31 (D.C. Cir. 2019) (finding ambiguity where statutory term was subject to multiple reasonable interpretations); Nat'l Labor Relations Bd. v. New Vista Nursing & Rehab., 870 F.3d 113, 142 (3d Cir. 2017) (same); Sears v. Principi, 349 F.3d 1326, 1329 (Fed. Cir. 2003) (same).

For these reasons, Congress did not speak directly on the meaning of "established by an entity (other than by an employer or employers)," and therefore, the Court's analysis advances to Chevron Step Two.

### 2.    *Chevron* Step Two

At Chevron Step Two, the Court must determine whether Treasury's interpretation of Section 9010(c)(2)(D) in Treasury Regulation 57.2(b)(2)(iv) "is based on a permissible construction of the statute." Chevron, 467 U.S. at 843. The regulation must "reflect[] a

---

[1] The Government cites the Joint Committee on Taxation's "Blue Book," which disqualifies MEWAs from Section 9010(c)(2)(D)'s exclusion. Def. Mot Summ. J. at 10. Although not official legislative history, some courts treat Blue Books as "indicative of what Congress . . . intend[ed]." Alfaro v. Comm'r, 349 F.3d 225, 230 n.19 (5th Cir. 2003). But see Fed. Nat'l Mortg. Ass'n v. United States, 379 F.3d 1303, 1309 (Fed. Cir. 2004) ("[T]he Blue Book interpretation is entitled to little weight."). To the extent such evidence is persuasive, it does not support the Plan.

plausible construction of the plain language of the statute and . . . not otherwise conflict with Congress' express intent." Rust v. Sullivan, 500 U.S. 173, 184 (1991).

Treasury Regulation 57.2(b)(2)(iv) reads:

> The term covered entity does not include any entity that is described in section 501(c)(9) that is established by an entity (other than by an employer or employers) for purposes of providing health care benefits. This exclusion applies to a VEBA that is established by a union or established pursuant to a collective bargaining agreement and having a joint board of trustees (such as in the case of a multiemployer plan within the meaning of section 3(37) of ERISA or a single-employer plan described in section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. 186(c)(5)). This exclusion does not apply to a MEWA.

The regulation is a permissible construction of Section 9010(c)(2)(D) and does not conflict with Congress' intent. It clarifies that (c)(2)(D)'s exclusion applies to VEBAs funded by an employer or employers but created and administered jointly with employees. It also offers specific examples of VEBAs that meet the "established by an entity (other than by an employer or employers)" criterion.

The regulation provides that multiemployer plans within the meaning of ERISA Section 3(37) qualify for the exclusion. According to ERISA, a "multiemployer plan" is a plan "(i) to which more than one employer is required to contribute, [and] (ii) which is maintained pursuant to one or more collective bargaining agreements between one or more employee organizations and more than one employer . . . ." 29 U.S.C. § 1002(37)(A). Similarly, the regulation provides that VEBAs that are jointly established and administered by an employer and the employer's employees, pursuant to Section 302(c)(5) of the Labor Management Relations Act, also qualify for the exclusion.

In contrast, VEBAs created and maintained solely by multiple employers, which, by definition, qualify as MEWAs, are "established . . . by an employer or employers" and do not qualify for (c)(2)(D)'s exclusion. The exclusion does not apply to an entity that is "both a non-fully insured MEWA and a VEBA because" it is "established by the employers whose employees participate in the MEWA." Final Regulations, Health Insurance Providers Fee, 78 Fed. Reg. 71476, 71749 (Nov. 19, 2013).

Further, Treasury Regulation 57.2(b)(2)(iv) gives meaning to the plural "and employers" language in Section 9010(c)(2)(D). For the plural to have meaning, it must encompass a situation in which multiple employers jointly establish a VEBA, which is by

definition a MEWA.  If (c)(2)(D)'s exclusion included MEWAs, the "and employers" language in the statute would have no meaning.

For the reasons above, Treasury Regulation 57.2(b)(2)(iv) is a permissible construction of Section 9010(c)(2)(D) and is not inconsistent with congressional intent. Under Chevron, the regulation is valid and governs the issue at hand.  As a result, as a MEWA, the Plan does not qualify for (c)(2)(D)'s exclusion from the Annual Fee requirement, and the Plan is not entitled to a refund on that basis.

### B.    *MVMA* Arbitrary and Capricious Review

An agency is not entitled to Chevron deference if it failed to "articulate[] a satisfactory explanation for its action."  Balestra v. United States, 803 F.3d 1363, 1373 (Fed. Cir. 2015) (quotation omitted).[2]  If an agency action "entirely failed to consider an important aspect of the problem" or "offered an explanation . . . counter to the evidence," a court may set aside the agency action as arbitrary and capricious.  Id. (quoting MVMA, 463 U.S. at 43).  But a court will "uphold a[n agency] decision of less than ideal clarity if the agency's path may reasonably be discerned."  Id. (quoting MVMA, 463 U.S. at 43).

The Treasury's issuing Regulation 57.2(b)(2)(iv) was not arbitrary and capricious. In fact, Treasury explained exactly why it decided that non-fully insured MEWAs should not qualify for Section 9010(c)(2)(D)'s exclusion.  See Final Regulations, Health Insurance Providers Fee, 78 Fed. Reg. 71477.  Treasury noted that employer participants in non-fully insured MEWAs pool their health risks, transfer those risks to the MEWA, or both, in much the same way an employer pools and transfers risks by purchasing a group insurance policy. Id. at 71477-78.  Treasury also noted that MEWAs are subject to state insurance laws.  Id. at 71478.  Based on this record, Treasury's action was not arbitrary and capricious.

### III.    Section 9010(c)(2)(A)'s Exclusion from the Annual Fee

In its Response and Reply brief, the Plan argues, for the first time, that it is not subject to the Annual Fee because it qualifies for Section 9010(c)(2)(A)'s self-insured employer exemption.  Pl. Resp. and Reply at 10-17.  That provision provides that a "covered entity" does not include "any employer to the extent that such employer self-insures its employees' health risks[.]"  The Plan argues that if the ERISA definition of "employer" applies to (c)(2)(D), then the same definition should apply to the term "employer" in (c)(2)(A).  Id. at 10.  The ERISA definition of "employer" is broad:

---

[2] The Supreme Court sometimes seems to merge Chevron Step Two and arbitrary and capricious review under MVMA, 463 U.S. 29 (1983). See, e.g., Encino Motorcars, LLC v. Navarro, 136 S.Ct. 2117, 2126-27 (2016); Michigan v. EPA, 135 S.Ct. 2699, 2708, 2712 (2015).  Nevertheless, the Federal Circuit treats the two inquiries as distinct and both necessary when reviewing an administering agency's interpretation of an ambiguous statute.  See Aqua Prod., Inc. v. Matal, 872 F.3d 1290, 1319 (Fed. Cir. 2017) (en banc); Balestra, 803 F.3d at 1368 (citations omitted).

> The term "employer" means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity.  29 U.S.C. § 1002(5).

According to the Plan, IBIS and IBA belong to a single "affiliated service group," and so qualify as a single employer for purposes of (c)(2)(A).  Pl. Resp. and Reply at 10-12.  For support, the Plan cites Section 9010(c)(3), which provides that persons treated as a single employer under I.R.C. Section 414(m) shall be treated as a single covered entity.  Id.  Section 414(m) says that employees of the members of an affiliated service group are treated as employed by a single employer.

The Plan's Section 9010(c)(2)(A) argument fails both because the Plan waived arguments based on (c)(2)(A) when it did not include them in its complaint and because (c)(2)(A) does not justify treating the Plan and all of its members as a single employer.

## A.     Jurisdiction and Waiver

The Government first argues that this Court lacks jurisdiction to entertain the Plan's Section 9010(c)(2)(A) argument because the Plan waived it by failing to include it in its claims to the IRS and by failing to include it in the pleadings.  Def. Reply at 8-11.

### 1.     Substantial Variance Rule

According to the substantial variance rule, a plaintiff seeking a tax refund may not "substantially vary" the legal or factual bases for its claim from those it presented to the IRS.  Lockheed Martin Corp. v. United States, 210 F.3d 1366, 1371 (Fed. Cir. 2000) (citation omitted).  The rule gives the IRS notice of the nature and factual bases of the claim and "an opportunity to correct errors," and it "limits any subsequent litigation to those grounds that the IRS had an opportunity to consider."  Id. (citations omitted).

Here, the Plan did not set forth Section 9010(c)(2)(A) as a ground for its refund claims, or any facts necessary for the IRS to assess that theory.  Compl. Ex. A-C.  However, the IRS never responded to any of the Plan's requests for refunds.  The Court declines to enforce the rule here because it would not serve the rule's purposes and it would reward the IRS for not doing its job under the guise of a rule meant to help the IRS do its job.

### 2.     New Theory Not Raised in the Complaint

The Government also asserts that the Plan waived its Section 9010(c)(2)(A) argument because it failed to specify (c)(2)(A) as a basis for its refund claim in its Complaint.  Def. Reply at 10-11.  The Plan had ample opportunity to ask for leave to amend

its Complaint, but it chose not to do so.  Discovery and briefing were limited to issues related to (c)(2)(D).  The Government would be prejudiced by allowing these late stage arguments.  See Crest A Apartments Ltd. II v. United States, 52 Fed. Cl. 607, 613 (2002) (citing, e.g., Lawmaster v. Ward, 125 F.3d 1341, 1345 n.2 (10th Cir. 1997); Charles v. Rice, 28 F.3d 1312, 1319 (1st Cir. 1994)).

At oral argument, the Plan asserted that the Court should permit its (c)(2)(A) theory because (c)(2)(A) is in the same subsection as (c)(2)(D) and because the Government opened the door to (c)(2)(A) by suggesting that the ERISA definition of "employer" could apply to (c)(2)(D).  Tr. at 53-54, Iowa Bankers Benefit Plan v. United States (No. 17-842) (April 9, 2019).  The Plan cites no support for its "same subsection" argument, and the Government's referring to the ERISA definition of "employer" does not open the door to new theories based on provisions where the term "employer" also happens to appear.  Therefore, the Plan waived its refund claim theory based on (c)(2)(A).

B.      The Plan's Section 9010(c)(2)(A) Argument on the Merits

Regardless, the Plan's Section (c)(2)(A) argument fails on the merits.  First, as explained earlier in this Opinion, the Court rejects the Government's suggestion that ERISA's definition of "employer" applies to (c)(2)(D).  See, supra, II.A.1.  Based on the same logic, ERISA's definition of "employer" does not apply to (c)(2)(A).  Second, although the Plan claims that it qualifies as a single "employer" under (c)(2)(A), its supporting arguments only justify treating IBIS and IBA as a single entity.  Pl. Resp. and Reply at 12.  Even assuming the Plan is correct, its arguments do not justify treating the Plan, its participating employers, IBA, and IBIS as a single entity.  See id.  The Plan insures the health risks of the participating employers' employees; this arrangement has nothing to do with whether IBIS and IBA constitute a single entity.  Finally, based on the record before the Court, the Plan did not present sufficient evidence to support its theory that it is wholly or partially "self-insure[d]" for purposes of (c)(2)(A).

Conclusion

For the reasons explained above, the Plan is a "covered entity" subject to the Annual Fee and is not entitled to a refund of its 2014, 2015, and 2016 Annual Fee payments.  The Plan's cross-motion for summary judgment is DENIED, and the Government's cross-motion for summary judgment is GRANTED.  The Clerk of the Court is directed to enter judgment for the Government.

IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge